UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. XSZ98911,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER WALLEY AND ERIN LYNN MATIAS,<br><br>    Defendants. | No. 18-cv-12454-MLW |

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

CABELL, U.S.M.J.

## I. INTRODUCTION

Plaintiff Certain Underwriters at Lloyd's, London, Subscribing to Policy No. XSZ98911 ("Lloyd's"), has brought an action for a declaratory judgment that it has no duty to pay on an insurance claim submitted by defendant homeowners Dr. Alexander Walley and Erin Lynn Matias. The defendants in turn seek a declaratory judgment that Lloyd's is obligated to pay, and counterclaim for breach of contract and violation of the Massachusetts consumer protection statute. The plaintiff moves for judgement on the pleadings. (D. 15). For the reasons explained below, I recommend that the motion be DENIED.

## II. RELEVANT FACTUAL BACKGROUND

The facts are taken from the pleadings and set out in a light most favorable to the defendants as the non-moving party. *See R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006). The defendants own a second home on Martha's Vineyard, Massachusetts ("the property"), which the plaintiff insured. (D. 1, Complaint ¶ 8-9).

The home is heated by a propane-fired, forced hot water heating system that requires electricity to operate. (Id. ¶ 13). On January 4, 2018, a large winter storm caused the home to lose power. (Id. ¶ 11). The defendants were not there at the time. (D. 6, Ans. & Countercl., Exhibit 1, 93A Demand Letter at 3). However, the defendants had been at the home less than two weeks before the power loss. The defendants do not rent the property and use it throughout the year without "winterizing" it. (Id.).

Dr. Walley's parents live next door to the home and are full-time, year-round Vineyard residents. They checked on the property on "virtually a daily basis" and in fact were the ones who notified the defendants of the power loss. (Id.).

The defendants had their professional property caretaker visit the home after learning of the power loss. (Id. at 4). The caretaker, after consulting with the defendants, drained the water from the domestic water lines but did not drain the

2

heating system. (Id.). The caretaker's experience suggested that it was not necessary to drain the heating system because the heating system was charged with glycol (anti-freeze).

The property was left without power until March 10, 2018. On that day the caretaker successfully reactivated both the water and electric supply to the property. (D. 1, Complaint ¶ 17-18). The caretaker also tried to reactivate the heating system but it would not start. (Id.).

The defendants later received a call from Dr. Walley's sister indicating that the property had "flooded". (Id.).

The defendants filed an insurance claim but the plaintiff denied the claim on the ground that the claim was excluded from coverage. The plaintiff made this determination based on a provision that excludes coverage due to the:

> Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied, or being constructed, unless you have used reasonable care to:
> (1) Maintain heat in the building; or
> (2) Shut off the water supply and drain the system and appliances of water.

(D. 1, Complaint at ¶ 22).

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings at any time "after the pleadings are closed," if it does not delay trial.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings allows the court to consider the factual allegations "in both the complaint and the answer," but is "governed by the same standard as a Rule 12(b)(6) motion to dismiss."  *Calixte v. David*, 320 F. Supp. 3d 294, 297 (D. Mass. 2018) (citing *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).

Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant.  *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).  Judgment is therefore appropriate only "if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

### IV. ANALYSIS

Parsed, the insurance policy disclaims coverage for loss (1) due to freezing in a dwelling that is (2) vacant or unoccupied, unless (3) the insured has used reasonable care to maintain heat in the building or shut off the water supply and drain the system of water.  In moving for judgment on the

4

pleadings, Lloyd's argues that the exclusion provision applies because (1) the damage to the defendants' residence was caused by leakage or overflow from "freezing" at the property, (2) the property was "vacant" or "unoccupied", and (3) the defendants did not "maintain heat in the building" or "drain" the heating system of water. As discussed below, judgment on the pleadings is not appropriate because the record does not conclusively demonstrate that the property was "vacant or unoccupied." Even assuming it did, it is not clear under Massachusetts precedent that the defendants failed to take reasonable steps to prevent loss to the property.

*On Whether the Dwelling was "Vacant" or "Unoccupied"*

As noted above, the freezing exclusion provision applies only "while the dwelling is vacant, unoccupied, or being constructed." Stated differently, the exclusion provision does not apply -- and coverage therefore may exist -- if the dwelling was not vacant or was occupied. That is what the defendants contend here. They assert that the property was fully furnished, that they used it throughout the year, that they had been at the property just two weeks before the storm and power outage, and that the property was "checked on" "virtually on a daily basis" by Dr. Walley's father, who lived next door. (D. 6, Ans. & Countercl., Exhibit 1, 93A Demand Letter at 3). As such, the defendants argue, the property was not vacant or

5

unoccupied, even if no one was physically present at the time of the loss, because the property was being regularly used and monitored.

Lloyd's has not disputed these factual assertions and fails to address the argument at all in either its initial or reply brief.  Even were it to do so, the court is constrained to accept the defendants' factual allegations as true, and finds that those facts are sufficient at this early juncture to support the defendants' assertion that the dwelling was not vacant and/or was not unoccupied, particularly where the property was a second home.  *See e.g., Chow v. Merrimack Mut. Fire Ins. Co.*, 83 Mass. App. Ct. 622, 630 (2013) (citing with approval jury instruction defining the term "unoccupied" in an identically worded exclusion provision to mean that "no person is presently utilizing the premises as a dwelling," but clarifying that "a building may be unoccupied for short periods of time...as in the case of a vacation home, and every time you leave your house you are not leaving it in a state that the law would say is unoccupied every time you walk out the door.").

Discovery will flesh out the extent to which the property was actually being used.  But because the freezing exclusion does not apply if the dwelling was not vacant or was occupied, and because the defendants have for now asserted facts which if true would appear to support such a finding, it follows that the

6

plaintiff has not met its burden of showing the applicability of the freezing exclusion. *See Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000).

### *On Maintaining Heat in the Home*

Even assuming the plaintiff were able to show the dwelling was vacant or unoccupied, the freezing exclusion provision still would not apply if the defendants took "reasonable care" to "maintain heat in the building."[1]  As noted above, the defendants did not maintain heat in the building but they did (through their caretaker) add anti-freeze to the system.  Lloyd's argues that this act was insufficient to bring the defendants within the ambit of the exception to the exclusion provision where the plain language of the policy narrowly defines the steps one must take and does not include adding anti-freeze as an option.

In support of their argument, the plaintiff relies on an Arkansas state appeals court decision involving an identically worded exclusion provision.  In *Fulton v. Beacon Nat. Ins. Co.*, 416 S.W.3d 759, 763 (2012), the plaintiff sued his insurer for failing to cover loss from a pipe that had burst from freezing. The plaintiff may have used reasonable care to shut off the water supply but admittedly did not maintain heat in the

---

[1] The exclusion provision also does not apply if the insured drained the system of water but there is no dispute here that the defendants failed to fully drain the heating system of water.

7

building and did not drain the system of water. The plaintiff argued that the insurance policy should be construed liberally as to only require the use of reasonable care to avoid loss. The appeals court rejected this argument and affirmed the lower court's granting of summary judgment in the insurer's favor. The court found that the clear and unambiguous language of the exclusion provision precluded coverage, regardless of whether the plaintiff used reasonable care to avoid loss, where it was undisputed that the plaintiff failed to maintain heat in the building or to shut off the water and drain the system of water. *Fulton*, 416 S.W.3d at 762-763.

Notably, though, the Massachusetts Supreme Judicial Court, interpreting a similarly worded provision, has also considered this issue and reached a contrary result.[2] *See Palmer* v. *Pawtucket Mut. Ins. Co.*, 352 Mass. 304 (1967). In *Palmer*, homeowners relying on the advice of a licensed heating contractor left their heating system off and their pipes undrained, and instead charged the system with anti-freeze. When the pipes subsequently exploded, the insurer denied coverage and the homeowners sued. The SJC found that the

---

[2] The insurance policy in *Palmer* excluded from coverage "[any] loss resulting from freezing while the described building(s) is vacant or unoccupied, unless the insured shall have exercised due diligence with respect to maintaining heat in the building(s), or unless the plumbing and heating systems and domestic appliances had been drained and the water supply shut off during such vacancy or unoccupancy."

homeowners' acts brought them within the exception clause of the exclusion provision. Notwithstanding language in the exclusion provision limiting an insured's options to exercising due diligence to either maintain heat in the building or drain the system and shut off the water supply, the SJC concluded that electing to protect a home with anti-freeze after consulting a licensed heating contractor was the functional equivalent of exercising due diligence with respect to maintaining heat. *Id.* at 305-307. The SJC found the exclusion provision to be "somewhat ambiguous" and noted that "if the insurer had wished to exclude the use of anti-freeze by a licensed heating contractor as a method of complying with the obligation of 'due diligence' in [the exclusion], a more explicit prohibition of that method should have been stated." *Id.*

The defendants argue that *Palmer* controls and requires that the plaintiff's argument be rejected. Under the *Erie* doctrine, a federal court sitting in diversity applies the law of the state in which it sits, and the views of the state's highest court with respect to state law are binding on the federal courts. *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). However, a federal court may, in a sense, "overrule" an outmoded decision by predicting that the state's highest court would, if presented with the opportunity, also overrule the

9

prior decision. *See, e.g., Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 17 (1st Cir. 1999); *Carlton v. Worcester Ins. Co.*, 923 F.2d 1, 3 & n. 5 (1st Cir. 1991); *In re Ryan*, 851 F.2d 502, 509 (1st Cir. 1988).

There is no basis to do so here. The SJC has cited *Palmer* in eight cases to date, principally for the dual propositions that "exclusions from insurance coverage are to be strictly construed" and that "where the policy language permits more than one rational interpretation that most favorable to the insured is to be taken", but has never critiqued or called into question the *Palmer* court's reasoning or holding. *See Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 477 Mass. 343, 350 (2017); *Hazen Paper Co. v. U.S. Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990); *Pinheiro v. Med. Malpractice Joint Underwriting Ass'n of Massachusetts*, 406 Mass. 288, 294 (1989; *Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 12 (1989); *Morin v. Massachusetts Blue Cross, Inc.*, 365 Mass. 379, 390 (1974); *Shaw v. Commercial Ins. Co. of Newark, N. J.*, 359 Mass. 601, 607 (1971); *King v. Prudential Ins. Co. of Am.*, 359 Mass. 46, 53 (1971); *Boston Ins. Co. v. Fawcett*, 357 Mass. 535, 543 (1970).

Similarly, the First Circuit Court of Appeals and other courts in this district have cited to *Palmer* for similar propositions but no court in this district or circuit has

10

questioned its continued viability. *See Duggan v. Travelers Indem. Co.*, 383 F.2d 871, 876 (1st Cir. 1967); *Mt. Airy Ins. Co. v. Greenbaum*, 127 F.3d 15, 19 (1st Cir. 1997); *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 427 (D. Mass. 2016); *Essex Insurance Co. v. BloomSouth Flooring Corp*., 2006 WL 8438741, at *5 (D. Mass. Aug. 16, 2006).

In light of this consistent precedent, this court predicts that the SJC would continue to follow rather than overrule *Palmer.* As such, even assuming the dwelling in this case was vacant or unoccupied, the court would still recommend denial of the plaintiff's motion because *Palmer* supports the defendants' argument that relying on an experienced caretaker's advice to use anti-freeze to avoid loss effectively constituted reasonable care under the policy to maintain heat in the building.[3]

---

[3] The defendants raise two additional arguments in support of their opposition to the plaintiff's motion but neither merits attention at present. First, the defendants contend that the loss to the property may have been caused by a mechanical malfunction of the heating system rather than freezing pipes. However, the record with respect to this claim is scant and undeveloped. Moreover, Lloyd's seeks to refute the argument by directing the court to extrinsic weather charts and news articles outside the pleadings. It would in this court's view be more appropriate to wait to consider the merits of this argument until the parties have had the opportunity to conduct discovery and present a well-developed record. Second, the defendants argue that the loss to the property may have been caused by their caretaker's negligence and, if so, his negligence cannot be imputed to them. Again, the record is undeveloped on this issue and the claim would be able to be better assessed following discovery.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (D. 15) should be DENIED.[4]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  February 26, 2020

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b), will preclude further appellate review of the District Court's order based on this Report and Recommendation. See *Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); see also, *Thomas v. Arn*, 474 U.S. 140 (1985).